UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DONNA LAMARCHE,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:16-CV-03185-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Ms. LaMarche brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C § 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. LaMarche's Motion for Summary Judgment.

# I. Jurisdiction

Ms. LaMarche filed her application for Disability Insurance Benefits on August 22, 2012. AR 185-92. Her alleged onset date is September 25, 2009. AR 21, 185. Ms. LaMarche's application was initially denied on November 16, 2012, AR 118-24, and on reconsideration on February 12, 2013, AR 126-30.

A hearing with Administrative Law Judge ("ALJ") Virginia M. Robinson occurred on July 30, 2014. AR 39-87. On March 27, 2015, the ALJ issued a decision finding Ms. LaMarche ineligible for disability benefits. AR 21-33. The Appeals Council denied Ms. LaMarche's request for review on August 27, 2015, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. LaMarche timely filed the present action challenging the denial of benefits, on October 21, 2016. ECF No. 3. Accordingly, Ms. LaMarche's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.  Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.  Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Ms. LaMarche was 38 years old at the alleged date of onset. AR 32, 185. She has at least a high school education. AR 32, 711. Ms. LaMarche is able to communicate in English. AR 32. Ms. LaMarche previously worked as a sales person, nurse assistant, conveyor feeder off bearer, and telephone solicitor. AR 31, 280-94. Ms. LaMarche has a history of drug use, but is in sustained full remission. AR 496, 713, 746, 980, 1025.

# V.    The ALJ's Findings

The ALJ determined that Ms. LaMarche was not under a disability within the meaning of the Act from September 25, 2009, through the date of the ALJ's decision. AR 21, 33.

**At step one**, the ALJ found that Ms. LaMarche had not engaged in substantial gainful activity since September 25, 2009 (citing 20 C.F.R. § 404.1571 *et seq.*). AR 23.

**At step two**, the ALJ found Ms. LaMarche had the following severe impairments: fibromyalgia, degenerative disk/joint disease, ulnar neuropathy of the right upper extremity, affective disorder, and anxiety disorder (citing 20 C.F.R. § 404.1520(c)). AR 23.

At **step three**, the ALJ found that Ms. LaMarche did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 24.

**At step four**, the ALJ found Ms. LaMarche had the residual functional capacity to perform light work, including: lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk approximately six hours in an eight hour day; sit for approximately six hours per eight hour workday; occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach, handle, finger, and feel with the

right upper extremity, but unlimited with the left upper extremity; she must avoid concentrated exposure to workplace hazards such as dangerous machinery or working at unprotected heights; and she is able to perform simple routine tasks with no more than superficial interaction with co-workers and occasional interaction with the public. AR 25.

The ALJ determined that Ms. LaMarche is unable to perform any past relevant work. AR 31.

**At step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that she can perform. AR 32.

## VI.    Issues for Review

Ms. LaMarche argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly discrediting Ms. LaMarche's subjective complaint testimony; and (2) improperly evaluating the medical opinion evidence.

## VII.   Discussion

### A. The ALJ Properly Discounted Ms. LaMarche's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Ms. LaMarche alleges; however, the ALJ determined that Ms. LaMarche's statements of intensity, persistence, and limiting effects of the symptoms were not

entirely credible. AR 27. The ALJ provided multiple clear and convincing reasons for discrediting Ms. LaMarche's subjective complaint testimony. AR 27-29.

First, the ALJ noted multiple inconsistencies between Ms. LaMarche's statements and the medical evidence. AR 27. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). As detailed by the ALJ, Ms. LaMarche's allegations of disabling pain are inconsistent with the objective medical imaging and testing. AR 27. Spine imaging showed a small annular tear and a disk bulge at the L5-L5 vertebrae, but no abnormalities at the L5-S1 level, laboratory testing was normal, imaging of her hips was normal, and conduction studies of her lower extremities were normal. AR 27, 635, 641, 651. Ms. LaMarche reported severe physical limitations and a limited range of motion due to her fibromyalgia, and that she could probably only lift five to ten pounds. AR 27, 258-59, 263. However, physical examinations demonstrated that she displayed a normal range of motion and generally exhibited normal strength. AR 681, 691, 707, 729, 796, 899, 986.

Ms. LaMarche alleged disabling mental health symptoms and that her mood swings were not effectively controlled with medication; however, she performed satisfactorily on mental status examination. AR 28, 710-715. Additionally, she also reported that her medications did improve her mental health. AR 28, 124-25. Ms.

LaMarche alleges that the ALJ erred in discrediting her subjective complaints regarding her mental health symptoms because her bipolar diagnosis causes her symptoms to fluctuate and the ALJ cherry-picked episodes of improvement. However, the ALJ did not find her bipolar disorder severe impairment at step two, a determination Ms. LaMarche does not challenge, thus it does not have more than a minimal effect on her ability to work. AR 23. Additionally, the evidence cited by Ms. LaMarche in support of her contention does not actually show that her mood cycled; rather, it shows largely normal findings and depression, and there is a general lack of episodes of mania contained in the record. *See* AR 491, 509, 553, 565, 624, 747, 750, 753, 756, 759, 762, 765, 768, 809, 811, 918, 920, 925, 937, 924, 955, 962, 974. The record supports the ALJ's determination that Ms. LaMarche's physical and mental limitations are not as limiting as she alleges.

Second, the ALJ found that Ms. LaMarche's activities did not support her allegations of total disability. AR 24-25, 28. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

1    Ms. LaMarche alleges totally disabling physical and mental limitations,

2    including, that she can only lift five to ten pounds; she is unable to sit for more

3    than 10 to 15 minutes; and that she is isolated, avoids people, and did not leave the

4    house much. AR 27-28, 50, 258-59. However, she drives to Portland, Oregon two

5    to three times per year, a 400 mile round trip. AR 28, 50, 58-59, 832. The ALJ

6    found, that even taking into account the reported five and a half to six hour drive

7    time for frequent breaks, the trips are inconsistent with the level of alleged

8    disability. AR 28. Additionally, Ms. LaMarche helped friends with housecleaning,

9    she cares for a friend's young daughter, and she is dating. AR 28, 832, 973. She

10   was the sole proprietor of a retail arts store, working 40 hours per week, from

11   January 2012 through May 2012. AR 28, 210-15. During this time she helped

12   people pick out paint glazes, ordered supplies, scheduled and held birthday parties,

13   swept and dusted, washed the paint brushes, closed down the till, and did

14   inventory. *Id*. She also worked full-time customer service jobs from May 2010

15   through July 2010 and in July 2011, and attended community college until

16   withdrawing after completing three quarters. AR 28, 203-07, 217, 314-25.

17       The ALJ reasonably found that even though the work performed did not

18   constitute substantial gainful activity, it contradicts Ms. LaMarche's allegations

19   regarding isolation, inability to get out of bed and follow a schedule, as well as her

20   physical allegations. AR 28. Similarly, the ALJ appropriately found that Ms.

LaMarche's ability to attend college was inconsistent with her allegations of significant cognitive and social limitations. AR 28, 314, 322-25. There is no evidence that Ms. LaMarche's symptoms prevented her from continuing to work or attend classes.

Third, the ALJ discounted Ms. LaMarche's credibility due to inconsistent statements and crimes of dishonesty. AR 28-29. "An ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness." *Burch*, 400 F.3d at 680 (9th Cir. 2005); *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider inconsistent statements or other testimony that appears less than candid in weighing credibility).

Ms. LaMarche testified that she experienced constant suicide ideation, but generally denied suicide ideation to mental health providers. AR 28, 492, 517, 529, 532, 712, 743, 832, 925, 1029. Ms. LaMarche stated that she "flunked out" of college. AR 57. However, while she did fail a few individual classes, she maintained a cumulative college grade point average of 2.21 and decided to drop out of college after three quarters. AR 28, 203-07, 217, 314. Furthermore, in October 2010, to become eligible for unemployment benefits, under penalty of perjury, Ms. LaMarche attested to the Washington State Employment Security Department that there was no restriction on her availability for full-time work and that she did not have any injuries, illnesses, or other conditions that prevented her

from returning to her past work in customer service. AR 394, 398. However, when applying for Social Security disability insurance benefits, Ms. LaMarche attested, also under penalty of perjury, that she had been unable to work since September 25, 2009. AR 185-86. The ALJ also noted that Ms. LaMarche has convictions for crimes involving dishonesty, shoplifting and forgery, and she was terminated from prior jobs for stealing. AR 29, 710-11, 743. Impeachment by evidence of a conviction for a crime involving dishonesty is an "ordinary technique[] of credibility evaluation." *Tommasetti*, 533 F.3d at 1039.

Fourth, the ALJ noted Ms. LaMarche's conservative treatment. AR 27. The ALJ found Ms. LaMarche's complaints of pain unreliable based on the conservative nature of the treatment that she received. *Id*. While surgery was a possibility, it was not recommended; Ms. LaMarche received injections, physical therapy, and medication therapy for pain; and only a night splint was recommended for her upper extremity complaints. AR 594-678, 838-99, 982-1023.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the

ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Ms. LaMarche's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

### a. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Joan H. Billings, Ph.D.

In November 2012, consultative evaluator Dr. Billings performed a psychological assessment of Ms. LaMarche and provided and opinion regarding her limitations. AR 710-15. Dr. Billings opined that Ms. LaMarche has limitations in concentration and social interactions, she would be unable to maintain employment if her mood swings were not controlled and continued to cycle in a rapid matter, and noted that Ms. LaMarche self-reported that her medications were not effectively controlling her mood swings. AR 715. Dr. Billings' opinion is contradicted by the opinions of Drs. Eisenhower and Eather. AR 89-100, 102-14.

The ALJ gave some weight to the opinion that Ms. LaMarche has limitations in concentration and social interactions, and the ALJ accommodated for these limitations in the residual functional capacity. AR 29-30. While, the ALJ did not completely discredit the remainder of the opinion, it was assigned limited weight. AR 29. The ALJ discounted Dr. Billings' opinion for multiple reasons supported by the record.

The opinion provided by Dr. Billings was discounted because it is inconsistent with Dr. Billings' own notes and testing. Dr. Billings' opinion stated that Ms. LaMarche would not be able to maintain employment. AR 715. However, upon examination by Dr. Billings, Ms. LaMarche performed well; she had an average memory, fund of information, and judgment; she had no difficulty maintaining attention and concentration during the assessment; she was able to respond back in a rapid manner; and she was able to follow directions without any repetition. AR 710-15. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

Furthermore, the ALJ discounted Dr. Billings' opinion because it relied heavily on Ms. LaMarche's self-reports, which the ALJ properly discredited. AR 29. Dr. Billings specifically notes that she relied on Ms. LaMarche's self-reports, which is not disputed by Ms. LaMarche. AR 715. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Indeed, absent the contradictory

testing results, Dr. Billings' opinion of Ms. LaMarche is almost entirely based on Ms. LaMarche's subjective complaints and reports. AR 710-15.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting part of Dr. Billings' opinion, the ALJ provided a determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Billings' opinion.

### c. Thomas Genthe, Ph.D.

In October 2014, Dr. Genthe completed a Department of Social and Health Services evaluation form addressing Ms. LaMarche's limitations. AR 1024-33. Dr. Genthe's opinion is contradicted by the opinions of Dr. Eisenhower and Dr. Eather. AR 89-100, 102-14.

The ALJ gave some weight to Dr. Genthe's opinion that Ms. LaMarche has limitations in concentration and social interactions, and the ALJ accommodated for these limitations in the residual functional capacity. AR 31. While, the ALJ did not

completely discredit the remainder of the opinion, it was assigned limited weight.

AR 30-31. The ALJ discounted Dr. Genthe's opinion for multiple reasons

supported by the record. *Id*.

Dr. Genthe's opinion was discounted by the ALJ because it was based

heavily on Ms. LaMarche's discredited self-reports and Dr. Genthe reviewed no

other records. AR 30. An ALJ may discount even a treating provider's opinion if it

is based largely on the claimant's self-reports and not on clinical evidence, and the

ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162. "[A]n ALJ need

not accept the opinion of a doctor if that opinion is brief, conclusory, and

inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. In addition

to relying heavily on Ms. LaMarche's discredited self-reports, Dr. Genthe received

incomplete information from Ms. LaMarche, including that Ms. LaMarche told Dr.

Genthe that she was last employed in 2011 when, in fact, she was self-employed in

2012, and in describing her education, she failed to disclose that she had taken

college level coursework. AR 30, 1025.

The opinion provided by Dr. Genthe was also discounted because it was

internally inconsistent. A discrepancy between a doctor's recorded observations

and opinions is a clear and convincing reason for not relying on the doctor's

opinion. *Bayliss*, 427 F.3d at 1216. Dr. Genthe included a checkbox form with his

opinion but did not associate the checkbox form to the results of the testing, instead

he noted there were serious concerns with the validity of the test results because Ms. LaMarche's responses evidenced deliberate distortion of reporting her symptoms. AR 1032-33. Dr. Genthe noted that the testing suggests Ms. LaMarche may not have responded in a completely forthright manner, which could lead the evaluator to form a somewhat inaccurate impression of the client. AR 1032-33. Dr. Genthe stated that the reporting patterns indicate and exaggeration of certain problems. AR 1033. He also stated that "there are indications suggesting that the client tended to portray herself in an especially negative or pathological manner. Some deliberate distortion of the clinical picture may be present; the critical items should be reviewed to evaluate the possibility of malingering." *Id*. He noted that the test results potentially involve considerable distortion and are unlikely to be an accurate reflection of Ms. LaMarche's objective status. *Id*. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

Furthermore, the ALJ discounted Dr. Genthe's opinion because the check-box ratings were inconsistent with his narrative assessments. AR 31. In the narrative portion of the report, Dr. Genthe assessed Ms. LaMarche's ability to understand and remember short, simple instructions and her ability to carry out short, simple instructions as good. But, in the check-box form, however, he rated these same areas of functioning as marked limited. AR 1027-28.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting part of Dr. Genthe's opinion, the ALJ provided a determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Genthe's opinion.

### d. Janet Erickson, MSW

The opinion testimony of Ms. Erickson, a social worker, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, counselors, welfare agency personnel, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

Ms. Erickson wrote a letter dated in August 2011 summarizing her care, and completed a mental health form in April 2013. AR 592-93, 776-78. The ALJ did include the opined limitations regarding Ms. LaMarche's concentration, persistence, and social functioning in the residual functional capacity; however, the remainder of the opinion was assigned limited weight. AR 30.

Limited weight was assigned because Ms. Erickson's opinion is inconsistent with the record and with Ms. LaMarche's actual level of functioning. *Id*. For example, Ms. Erickson opined that the claimant was severely limited regarding sustaining an ordinary routine without special supervision, yet, the claimant has raised her son single handedly and was able to work full time after the alleged onset date. AR 30. Additionally, the marked limitations that Ms. Erickson assessed in social functioning are inconsistent with Plaintiff's actual social activities, including caring for a friend's daughter, dating, operating a retail arts store, and attending college. AR 28, 203-07, 210-15, 217, 832, 973. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See*

*Morgan*, 169 F.3d at 600. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. Additionally, Ms. Erickson conducted no testing of her own, and the record demonstrates that Ms. Erickson relied heavily on Ms. LaMarche's discredited self-reports. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

The ALJ properly provided germane reasons for assigning limited weight to the opinion provided by Ms. Erickson. Thus, the ALJ did not err in the consideration of Ms. Erickson's opinion.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

///

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 3rd day of November, 2017.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge